Chief Justice Robertsoh and Judge Ewing
composing the Court in this case—the former delivered the following opinion.
Henly having, in an action of ejectment, obtained a judgment for eviction against Bratton, for about fifty acres of land—Bratton and one Cox,-shortly afterwards, to-wit, on the 30th of June, 1821,"made a contract in writing with his agent, Humphrey Marshall, whereby it was agreed that, for the price of nine dollars an acre, to be paid by them, in specified proportions, a conveyance of Henly’s title should be made to Cox, on full payment of the stipulated consideration; and from the. tenor of which it would appear, that Cox was then still in possession, under a claim alleged to have been derived from Uriah Mallory, as a grantee of the Commonwealth.
In February, 1828, Henly filed a bill in chancery, for obtaining a specific execution of the agreement, and for enforcing his lien on the title, for an unpaid balance of the consideration; and Gore, being in the possession of *134 the land, or a part of it, was made a defendant together with the heirs of Cox, who had, in the mean time, died intestate and insolvent, and with Bratton, in his own right, and as administrator of Cox.
An occupant, to take advantage pf the 7 years jaw, must show a grant from tho state, to himself—directly, or by a regular succession of conveyances ; that it povers the land jn controversy, and n residence upon it for seven years, before the suit was brought.
A contract,made after the recovery in eject, for a purchase of the land, from the plaintiff, by the def’ts, would es-top thepi from denying his title; but a purchaser from the def’ts, before their contract with the pit’f. might set up his adverse title against the pit’f; ior no admission by a vendor, made after the sale, can be used against his purchaser; but a purchaser from the def’t, pending the suit, is in the same predicament as hisvendor—bound by the judgment, liable to eviction by process upon it &c. so also if he purchased of one whom he knew was connected with dc. fendant by privity; and def’t being in possession, would be strong evidence of such knowledge.
*134 The suit is for the benefit of Marshall, woh shows a beneficial interest.
So far as Bratton and Cox’s heirs may be concerned, we have no doubt that, according to the facts as they are exhibited by the pleadings, Henly is entitled to a decree for a balance still due, and for a sale of his title for the purpose of making that balance, and that, therefore, tho Circuit Court had, thus far, jurisdiction.
Gore, however, alleges that he, for a valuable consideration, had bought, from Cox, his claim under Mallory, prior to the date of the contract, between Marshall, Bratton and Cox, and exhibited a bond executed to him by Cox, dated in May, 1820, acknowledging a sale, and stipulating for the surrender of the possession on or before the I5lh of June, 1821; and he insisted on Mallory’s title, denied Henly’s right, and relied on adversary possession and residence on the land.
The Circuit Court having dismissed the bill, the only question which we shall here consider, is whether Gore stands in such an attitude as to be able, successfully, to rqsist Henly’s equity'.
Gore, however he may in fact have held or claimed the land, cannot be protected by lapse of time:—first, because he has pot shown when he took the possession of the land, or that he had resided on it seven years prior to the filing pf the bill; and,second,because he has not shown that Mallory’s patent covers the land, or that, if it does, he had a regular derivation of title, in law or equity, from Mallory.
Heply, however, has not, in this case, proved certainly, that his patent covers the land, unless his judgment in ejectment should be deemed sufficient evidence of that fact, for the purpose of maintaining his equitable claim to relief against Gore.
Cox and Bratton were estopped by the judgment against the latter—because, as against them, it appears ffiat Bratton was the son-in-law and tenant of Cox; but *135 that which is conclusive evidence against them, of such privity,—that is, their contract with Marshall and their virtual admissions of the allegations of the bill to that effect—may not affect Gore, because his contract purports to have been made prior to that of Marshall with them, and no admissions by them, since the date of his contract, can be used to his prejudice. If he, in good faith, made the alleged agreement with Cox, at the date of the written memorial of it, it is far from being improbable that Cox made the contract with Marshall for his benefit, and for the purpose of being able to make him a good title, and that he bought from Cox with that understanding, and with a knowledge of the pendency of the ejectment and of the privity between Cox and Bratton. And, if this had satisfactorily appeared, we should not doubt that the judgment would be as conclusive against Gore, as it must be admitted to be against his vendor, in consequence of the privity between him and Bratton, who was the defendant in the action. But this does not sufficiently appear from any thing that is evidence against Gore.
upon a bill to on chase money— Üho’ 1’1616 mi;y be a tenant in possession, asserting an adverse claim, the complainant may have a decree for the sale of the title purchased of him; and, if the tenant was a pedente lite purchaser of one from whom the complainant had recovered the land, and is bound by that judgment, lie must surrender the possession to go with the title decreed to be sold.
However, not only is there no proof of any valuable consideration between Cox and Gore, but their agreement recites the fact, that Bratton was, at the date of it, in the possession of the land. And from this fact— and especially as the whole transaction is liable to some suspicion—we feel authorized to infer, that Gore, at the time of his contract with Cox, knew how Bratton held, and that he afterwards obtained the possession from Bratton. And therefore, according to this deduction, as the contract was made pendente lile, Gore might have been evicted by process on Henly’s judgment, and can occupy no better position in this suit, than that of Cox or Bratton.
As, according to the facts now appearing, Marshall seems to be entitled to a decree for a specific execution of his agreement with Cox, and for an enforcement of his lien, on Henly’s title, for what remains due of the ^ 7 *136 consideration—the Circuit Court erred in dismissing the bill; for, even if Gore be not estopped by the judgment in the action of ejectment, there might, without atfgcting him, be a decree for selling Henly’s title, to which Cox’s représentatives could not object, because he placed Gore in his present attitude during the pendency of the action against his tenant; but Gore might be compelled to surrender the possession, because, as we have before said, he might have been turned out by an execution on the judgment, and therefore, although any right he may have to the benefit of Mallory’s title should still remain unaifected, he cannot be permitted to frustrate Henly’s equitable lien on his owú title, and his consequential right to a surrender of the possession which was adjudged to him, and which cannot be legally withheld by Bratton or his post litem transferee.
Where there are infant deft’s in ch’y, the cause should not be heard without answers for them: the failure of a guardian ad litem to answer, is not cause for dismissing the bill; the court should coerce an answer, or appoint a new guar dian,.& defer the hearing until thd answer comes in.
But, in remanding the case, we cannot direct the Circuit Court to render a filial decree, without an answer for two of Cox’s heirs, who appear to have been, and may yet be, infants. As a bill cannot be taken for confessed against an infant, the Circuit Court prematurely heard the cause before the guardian ad litem, who had been appointed for the two infant heirs of Cox, had filed any answer. As the infants had been made parties, the failure, by their guardian, to afiswer the bill was no ground for dismissing it without prejudice. It was the duty of the Coiirt to compel an answer, or to appoint some other person guardian to defend;, and to defer the hearing of the cause until after a proper answer had been filed. It does not appear that Marshall, who managed the case, had been delinquent.
Wherefore, it is decreed and ordered, that the decree of the Circuit Court be reversed, and the cause remanded with instructions to appoint a new guardian ad litem for the infant heirs of Cox, if any of his heirs shall still be in minority, or to obtain an answer from the guardian heretofore appointed, and to allow such further proceedings, and make, after proper preparation, such final decree as shall, according to the principles of this opinion, be just and proper.